IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA CUNNINGHAM,<br><br>          Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>          Defendant. | 4:12-CV-3093<br><br>MEMORANDUM AND ORDER |

    This matter is before the Court on the denial, initially and upon reconsideration, of plaintiff Amanda Cunningham's disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. The Court has considered the parties' filings and the administrative record, and affirms the Commissioner's decision to deny benefits.

BACKGROUND

    Cunningham applied for Social Security disability benefits in September 2008.[1] T307. Her claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ).[2] T163-187, 190-91.

    To determine whether a claimant is entitled to disability benefits, the ALJ performs a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant has the burden to establish that she has not engaged in substantial gainful activity since her alleged disability onset date. *Id*.; *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006). If the claimant has engaged in substantial gainful activity, she will be found not to be disabled; otherwise, at step two, she has the burden to prove she has a medically

---

[1] She also applied for Supplemental Security Income benefits, but they do not appear to be at issue in this case. *See* T44, 153, 175, 307.

[2] There are actually three claims at issue, based on Cunningham's individual eligibility for benefits and for child disability benefits on her mother's and father's earning accounts. *See* T20, 163-174. Although Cunningham's brief refers to her father's earning records, the decision actually attached to her complaint was based on her individual eligibility. *See* filing 15 at 1, filing 1 at 7-15. But the Court does not need to sort this out, because all three ALJ decisions were essentially identical. *Compare* T20-28, 32-40, 44-53.

determinable physical or mental impairment or combination of impairments that significantly limits her physical or mental ability to perform basic work activities. *Id.* At step three, if the claimant shows that her impairment meets or equals a presumptively disabling impairment listed in the regulations, she is automatically found disabled and is entitled to benefits. *Id.* Otherwise, the analysis proceeds to step four, but first, the ALJ must determine the claimant's residual functional capacity (RFC), which is used at steps four and five. 20 C.F.R. § 404.1520(a)(4). At step four, the claimant has the burden to prove she lacks the RFC to perform her past relevant work. *Id.*; *Gonzales*, 465 F.3d at 894. If the claimant can still do her past relevant work, she will be found not to be disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*

In this case, at step one, the ALJ found that Cunningham had not engaged in substantial gainful activity since her alleged disability onset date of October 1, 2007. T46. At step two, the ALJ found that Cunningham has the following severe impairments: history of fetal alcohol syndrome with attention-deficit hyperactivity disorder, post-traumatic stress disorder, bipolar disorder, and alcohol abuse. T46. But at step three, the ALJ found that Cunningham did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment. T47.

The ALJ found that Cunningham had the RFC to perform a full range of work, but was limited to performing simple, routine, repetitive work which involves only one or two steps and does not require extended attention or concentration, goal setting or changes on the job, and with only occasional social contact on the job. T48. At step four, the ALJ found that Cunningham had no past relevant work: her past employment was at part-time jobs where her pay was not substantial. T51. And at step five, the ALJ found that Cunningham could perform jobs that exist in significant numbers in the national economy: for instance, laundry worker, cleaner, and hand packer. T51-52. So, the ALJ found that Cunningham was not disabled. T52-53.

The Appeals Council of the Social Security Administration denied Cunningham's request for review. T1-5. Cunningham's complaint seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g). Filing 1.

## ANALYSIS

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing

- 2 -

42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision, and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id*. The Court reviews for substance over form: an arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding when that deficiency had no bearing on the outcome. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). And the Court defers to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

### MENTAL RETARDATION

The first issue Cunningham raises on appeal is based on a psychiatric evaluation performed on October 29, 2008, by Mona Pothuloori, M.D., after Cunningham was referred to Pothuloori for evaluation by her treating counselor. T551. Pothuloori observed that Cunningham appeared to be "functioning in the mildly mentally handicapped range." T552. Several months later, Lee Branham, Ph.D., completed a psychiatric review worksheet for Cunningham on which he found that an RFC assessment was necessary, based on listings for organic mental disorders, affective disorders, anxiety-related disorders, and substance addiction disorders. T591. But he did *not* check the box for listing 12.05, "Mental Retardation," noting in the margin:

> New [Medical Evidence of Record] includes [outpatient] notes for Dr. Pothuloori, who suggests mild [mental retardation], per her [Mental Status Evaluation]. If this were an accurate estimate, it would meet 12.05C,[3] but we have prior testing showing IQ's in the high part of the borderline range. [Global Assessment of Functioning][4] of 55 is consistent with past estimates, and I suggest the previous review is a correct assessment.

---

[3] The 12.05C listing is met when the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.05C.

[4] A Global Assessment of Functioning (GAF) score represents "the clinician's judgment of the individual's overall level of functioning," not including impairments due to physical or

- 3 -

T591. In other words, Branham considered whether Pothuloori's impression supported a finding of a listing that might be presumptively disabling if sufficiently severe—mental retardation—but found that the listing was unsupported by the evidence.

Cunningham's complaint is that the ALJ did not discuss Pothuloori's observation with the clinical psychologist who testified at the administrative hearing, Thomas England, Ph.D., or discuss Pothuloori's observation in the administrative decision. Filing 15 at 5. So, Cunningham contends, "[w]e have no way of knowing how or if the treating psychologist's [sic] opinions are analyzed, or what weight they are given. If the ALJ chose to disregard the opinions of treating psychologist [sic] Dr. Pothuloori she should have at [least] explained the reason." Filing 15 at 5.

There are a number of problems with Cunningham's argument. First, there is nothing in the record showing that Pothuloori was a "treating" psychiatrist. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides or has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. A treating source's opinion on the nature and severity of an impairment will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). But a claimant only has an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that the claimant sees, or has seen, the source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." 20 C.F.R. § 404.1502. And here, there are only records of Pothuloori's initial evaluation and a follow-up appointment 3 weeks later. T549-53. The record does not establish that Pothuloori was a treating source.

Second, Pothuloori's own notes are inconsistent with Cunningham's argument. Pothuloori's initial diagnostic impression listed, among other things, several Axis I conditions and "Mild Mental Retardation" as a possible Axis II condition. T553. But after the follow-up appointment, while the Axis I conditions were largely unchanged, Pothuloori wrote "None" next to the Axis II diagnosis. T550. In other words, the medical records suggest that

---

environmental limitations. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34.

Pothuloori backed away from her initial impression of mild mental retardation after Cunningham's follow-up visit. And even if Pothuloori was a treating source, and had opined that Cunningham was mildly mentally retarded, the ALJ would have been justified in finding Branham's rejection of that suggestion to be more credible. Branham's opinion was based on more comprehensive objective testing than was available to Pothuloori, who based her assessment simply on her observations at the initial evaluation. *See Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000).

Nor is there any merit to Cunningham's argument that the ALJ should have examined England about Pothuloori's initial impression, or discussed it in her decision. Pothuloori had an initial diagnostic impression that did not survive to the diagnosis Pothuloori made 3 weeks later, and that Branham found to be inconsistent with the objective evidence in the medical records. Cunningham directs the Court to no authority dictating that the ALJ was required to treat such an observation as critically significant. Nor was it necessary for the ALJ to question England about it: England noted Pothuloori's observation during his hearing testimony, and discussed it specifically in concluding that given all the evidence, Cunningham did not meet the criteria for the 12.05C listing. T117-19, 126-27. The ALJ relied on England's opinion, and IQ tests reflected in the record, in concluding that the 12.05C listing was not met. T50-51. While the ALJ did not mention Pothuloori's name, the ALJ's decision reflects a full consideration of the available evidence and a reasoned determination based on that evidence. No more was required.

### WEIGHT TO ENGLAND'S TESTIMONY

Second, Cunningham asserts that the ALJ did not give proper weight to England's testimony. When asked about how Cunningham's limitations might manifest in her employment, England opined that "in situations where either she had personal stresses outside the work situation that were significant or if she had relationship issues in the work context that were problematic in some way, she may well be prone to either avoiding those situations or those individuals and possibly occasionally not attending the work setting." T126. But, "with involvement in treatment and [proper] medication[,]" England said he "wouldn't expect that more than perhaps once or twice a month to be rising to a problem level that would involve significantly impaired work performance, but it could still occur." T126. Based on that testimony, the vocational expert who testified at the hearing said that Cunningham would have difficulty maintaining work if she missed work twice a month. T130-31. But, one time a month would be within acceptable limits. T131.

Cunningham's complaint is that the ALJ failed to question England on whether she would miss 1 day a month or 2, and failed to discuss that matter in the administrative decision. As best the Court can tell, Cunningham's argument is directed at the ALJ's determination of Cunningham's RFC—the RFC assesses the claimant's ability to meet the physical, mental, sensory, and other requirements of work, 20 C.F.R. § 404.1545(a)(4), and showing up for work is one of those requirements. So it is important to remember that the burden of persuasion to demonstrate RFC is on the claimant. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The Court notes, initially, that England did not actually say that Cunningham would miss 1 or 2 days of work a month. England was asked generally about how Cunningham's psychological conditions would manifest in her employment, and he said that if she had personal stresses or relationship issues, "she may well be prone to either avoiding those situations or those individuals and possibly occasionally not attending the work setting." T126. Those things, he said, might happen "once or twice a month" to the point that it would impair her work performance. T126. In other words, what England actually said was that Cunningham's work performance would be impaired once or twice a month, and one of the ways in which her performance could be impaired *might* be that she would miss work. T126. That is not the same as saying that she would miss work once or twice a month. So, to the extent that Cunningham's argument depends on the high end of England's projection, that argument is weakened by a closer examination of his actual testimony.

Beyond that, the Court finds that the ALJ's decision was supported by substantial evidence. It is true that the ALJ has a duty to fully and fairly develop the evidentiary record, independent of the claimant's burden to press her case. *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on her ability to work. *Id.* at 916. But while the ALJ was required to develop the record fully, she was not required to provide an in-depth analysis on each piece of evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). Nor, in the Court's view, was she required to cross-examine England and pin him down to whether Cunningham might be expected to miss 1 or 2 days of work a month. The ALJ instead found that Cunningham's RFC would limit her to jobs requiring only occasional social contact. T48. When England's testimony is read in context, it supports the ALJ's determination of Cunningham's RFC. It was Cunningham's burden to demonstrate otherwise. *Perks*, 687 F.3d at 1092. While it might have been possible to conclude from the evidence that Cunningham would miss too much work to remain employable, it is at least

as possible to conclude otherwise—and given that, the Court is in no position to dispute the ALJ's conclusion. See *Perkins*, 648 F.3d at 897.

### CUNNINGHAM'S CREDIBILITY

Finally, Cunningham complains about the ALJ's finding that Cunningham was only partly credible. The ALJ found, as is common in these cases, that "medically determinable impairments could reasonably be expected to cause at least some of the symptoms" that Cunningham alleged, but Cunningham's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." T49. The ALJ did note, however, that when asked whether she was able to work, Cunningham "answered that it would be difficult for her but she did not declare that she was not able to do so. Thus," the ALJ said, "even if everything [Cunningham] said was true and correct, it would not establish that her medical conditions completely prohibit her or limit her functioning to such an extent that she cannot perform any substantial gainful activity." T50.

Cunningham points out that she has no past relevant work, suggesting that she has tried and failed to work in the past. And Cunningham argues that the real question is not whether she can "work," but whether she can perform substantial gainful activity and maintain employment. Filing 15 at 7. But Cunningham misunderstands what the ALJ was saying. The ALJ clearly concluded that Cunningham's testimony about her symptoms was not entirely credible. But the ALJ also noted that *even if* Cunningham was completely truthful, her testimony would not establish an inability to work. That observation was entirely consistent with Cunningham's testimony, and it was appropriate.

Cunningham also contends that the ALJ made too much out of inconsistencies between Cunningham's hearing testimony and her answers to interrogatories. Filing 15 at 8. The ALJ noted that in her answers to interrogatories, Cunningham failed to mention lack of concentration or memory as impediments to work. T50. But she testified to that effect at the hearing. T49. Cunningham argues, in essence, that her failure to mention a lack of memory on the interrogatories is actually evidence of a lack of memory, because she forgot to mention memory problems. Filing 15 at 8. Cunningham also complains about the ALJ's observation that Cunningham had applied for jobs, contending that there is no basis for "the idea that if someone pursues employment they are able to work." Filing 15 at 8.

Cunningham again misunderstands the ALJ's point. The ALJ was plainly entitled to conclude that Cunningham's hearing testimony was less credible because she failed to mention some of her symptoms in interrogatories. Cunningham was free to explain the omission to the ALJ, but

the ALJ was not required to believe her. And while looking for work does not prove a claimant can work, it does tend to show that the claimant, at least, believes she might be able to work—and that, in turn, reflects on the claimant's hearing testimony that working would be difficult for her. Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. *Renstrom*, 680 F.3d at 1067.

And more importantly, the Court defers to the ALJ's credibility findings where the ALJ expressly discredits a claimant's testimony and gives a good reason for doing so. *See id*. Questions of credibility are for the ALJ in the first instance. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). In this case, while there might have been reasons to credit Cunningham's testimony, there were also reasons not to credit it fully. The ALJ identified those reasons and explained them, and the Court defers to that determination.

In sum, the Court finds no merit to Cunningham's claim that the ALJ committed reversible error.

IT IS ORDERED:

1. The Commissioner's decision is affirmed.

2. Cunningham's complaint is dismissed.

3. The parties shall bear their own costs.

4. A separate judgment will be entered.

Dated this 29th day of April, 2013.

BY THE COURT:

John M. Gerrard
United States District Judge